**MERCANTILE BANK OF ST. LOUIS, Plaintiff,**

v.

**David J. and Luann BENNY, Appellant,**

v.

**COLUMBIA MUTUAL INSURANCE CO., Respondent.**

**No. WD 55413.**

Missouri Court of Appeals, Western District.

Nov. 10, 1998.

George W. Richardson Kansas City, MO Attorney for Appellant,

Robert A. Brown, Jr. St. Joseph, MO Attorney for Respondent.

Before SPINDEN, P.J., and ULRICH and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

David and Luann Benny appeal the summary judgment of the circuit court in favor of the respondent, the third party defendant below, Columbia Mutual Insurance Company,

on the appellants' third party claim against it for payment of benefits they alleged were due them under their policy of automobile insurance for property damage to their Monte Carlo resulting from an accident that occurred while it was being operated by their son, Jason Benny.

The appellants raise two points on appeal. In Point I, they claim that the trial court erred in sustaining the respondent's motion for summary judgment because there was a genuine dispute of material fact in that there was a dispute as to whether they intended to agree to the driver exclusion endorsement of the policy, totally excluding Jason as a covered driver, a material fact on which the respondent relied for summary judgment. In Point II, they claim that the trial court erred in granting summary judgment to the respondent because, even if there was no genuine dispute as to the material facts, the respondent was not entitled to judgment as a matter of law in that the driver exclusion endorsement violated, in part, the Motor Vehicle Financial Responsibility Law (MVFRL), §§ 303.010–303.370 [1], in excluding the required minimum liability coverage for Jason and, not containing a savings clause, the entire exclusion was rendered void and unenforceable, including the exclusion of collision coverage.

We affirm.

### Facts

On May 27, 1994, the appellants negotiated with Hamilton–Downing Insurance Services, Inc., to obtain liability, medical payment, and uninsured motorist coverage on their 1977 Mercury Monarch and 1978 Oldsmobile Delta 88. As a result, an application for coverage was submitted on May 27, 1994, to the respondent. The respondent accepted the application and issued a policy of automobile insurance covering the appellants' automobiles, which became effective May 29, 1994. This initial policy did not contain a provision excluding Jason as a covered driver.

On September 9, 1994, the appellants purchased a 1995 Chevrolet Monte Carlo and added collision and comprehensive coverage for it to their policy. On November 28, 1995, the appellant, David Benny, signed a driver exclusion endorsement, effective November 29, 1995, which provided that "[i]n consideration of the premium charged for your policy, it is agreed we shall not be liable and no liability or obligation of any kind shall attach to us for loss or damage while any motor vehicle insured under this policy is operated by: Jason. . . ." The appellants claim that they did not intend to completely exclude Jason from coverage while operating their automobiles, but intended for him to be covered as an occasional driver. The respondent contends that the appellants informed the insurance agent handling the endorsement that Jason was moving out of their house and that they wanted him completely excluded from coverage on all three of their automobiles. On or about December 7, 1995, the respondent mailed to the appellants a copy of the amended declarations of their policy of insurance which, *inter alia,* stated that they replaced any previous declarations and that Jason was excluded from coverage.

On February 10, 1996, Jason was operating his parents' Monte Carlo when it was struck by an uninsured motorist, sustaining front-end damage. Following the accident, the appellants made a claim for collision benefits they claimed under their policy of insurance with the respondent. The respondent refused payment, claiming that the driver exclusion endorsement excluded coverage for any damage sustained by their automobile while it was being operated by Jason. Thereafter, the appellants stopped making promissory note payments to Mercantile Bank, the lienholder on their Monte Carlo.

On August 19, 1996, Mercantile Bank filed a petition to collect on the promissory note against the appellants, seeking payment of $17,548.25, the remaining balance on the note, plus interest, attorney's fees, and costs. On October 18, 1996, the appellants filed their answer and third party claim against the respondent, alleging that they were entitled to payment of insurance benefits from the respondent for the damage sustained by their Monte Carlo as a result of the accident on February 10, 1996, while Jason was oper-

1. All statutory references are to RSMo 1994, unless otherwise indicated.

ating it. On July 15, 1997, the respondent moved for summary judgment, alleging that based on the undisputed facts it did not owe the appellants any insurance benefits in that the express terms of the policy of insurance completely excluded Jason from coverage as to the Monte Carlo, which motion was granted by the trial court on October 14, 1997.

This appeal follows.

## Standard of Review

When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was entered. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless otherwise contradicted by the non-moving party's response to the summary judgment motion. We accord the non-movant the benefit of all reasonable inferences from the record.

Our review is essentially *de novo*. The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.

*ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. *banc* 1993) (citations omitted). Summary judgment will be upheld on appeal if: (1) there is no genuine dispute of material fact, and (2) the movant is entitled to judgment as a matter of law. *Id.* at 377.

## I.

In Point I, the appellants claim that the trial court erred in sustaining the respondent's motion for summary judgment because there was a genuine dispute of material fact in that there was a dispute as to whether they intended to agree to the driver exclusion endorsement of the policy, totally excluding Jason as a covered driver, a material fact on which the respondent relied for summary judgment. Specifically, the appellants claim that this dispute was created by the filing of appellant David Benny's affidavit in response to the respondent's motion for summary judgment. The respondent contends that there was no genuine dispute of material fact as to the parties' intentions to exclude Jason as a covered driver under the policy because their agreement to exclude him as a covered driver was clear from the four corners of the insurance contract. As such, it asserts that David Benny's affidavit could not be considered by the trial court to vary or contradict the contract's terms so as to create a dispute of material fact as to whether it excluded Jason as a covered driver under the policy with respect to the accident that occurred on February 10, 1996, because to do so would violate the parol evidence rule.

To be entitled to summary judgment under Rule 74.04, the respondent was required to show that: (1) there was no genuine dispute as to the material facts; and (2) the undisputed facts demonstrated that it was entitled to judgment as a matter of law. Rule 74.04; *ITT*, 854 S.W.2d at 380. If the movant for summary judgment is a defending party, as is the case here, it can establish a *prima facie* case for summary judgment by one or more of the following three means: (1) showing facts that negate any one of the appellants' elements facts; (2) showing that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of any one of the claimants' elements; or, (3) showing that there is no genuine dispute as to the existence of each of the facts necessary to support respondent's properly pleaded affirmative defense. *ITT*, 854 S.W.2d at 381. In the respondent's motion for summary judgment, it employed the first means by alleging facts which it contended were undisputed and negated a required proof element of the appellants' claim for payment of insurance benefits. As to the proof elements of the appellants' claim, the appellants were required to show that: (1) the "[respondent] issued its policy to [the appellants] on [their 1995 Chevrolet Monte Carlo] covering loss

due to [collision]"; (2) "such property was damaged by [collision]"; and (3) "the policy was in force on the date of such loss." MAI 31.09 [1978 New]; *see also Kauble v. MFA Mut. Ins. Co.,* 637 S.W.2d 831, 832–33 (Mo. App.1982).

In order to make a *prima facie* case for summary judgment by negating a proof element of the appellants' case, the respondent alleged in its motion for summary judgment that the driver exclusion endorsement of the policy totally excluded Jason as a covered driver of the Monte Carlo. *See Nixon v. Life Investors Ins. Co. of America,* 675 S.W.2d 676, 679 (Mo.App.1984) (holding that a proof element of a claim for payment of insurance benefits includes the requirement that the loss claimed must be caused by the peril insured against). The first issue then for us to decide is whether the respondent made a *prima facie* case for summary judgment based on the alleged undisputed facts in its motion which, if true, would have negated the appellants' proof element that the property damage to their Monte Carlo, while being operated by Jason, was a covered loss.

In contending that under the undisputed facts the appellants did not suffer a covered loss, the respondent relies on the driver exclusion endorsement of the policy, signed by David Benny, which stated: "In consideration of the premium charged for your policy, it is agreed we shall not be liable and no liability or obligation of any kind shall attach to us for loss or damage while any motor vehicle insured under this policy is operated by: Jason...." Obviously, if this endorsement was enforceable as part of the contract for insurance of the parties, there would be no coverage for Jason's operation of his parents' Monte Carlo, including collision coverage, establishing a *prima facie* case for summary judgment for the respondent on the appellants' claim for insurance benefits under the policy.

It is well established that insurance policies are contracts and the rules of contract construction apply. *Capitol Indem. Corp. v. Callis,* 963 S.W.2d 247, 249 (Mo.App.1997). As such, when the terms of an insurance contract are unambiguous, plain, and clear, we are bound to enforce them as written,

unless they violate public policy. *MIF Realty v. Pickett,* 963 S.W.2d 308, 311 (Mo.App. 1997) (*citing Malan Realty Investors, Inc. v. Harris,* 953 S.W.2d 624, 626–27 (Mo. banc 1997)). "A contract is ambiguous only if reasonable people may fairly and honestly differ in their construction of the terms because the terms are susceptible of more than one meaning." *Smith v. Taylor–Morley, Inc.,* 929 S.W.2d 918, 922 (Mo.App.1996).

The language of the policy exclusion here is, without question, unambiguous in that it can only be interpreted to mean that Jason was excluded from all insurance coverage, including collision coverage, while operating the appellants' Monte Carlo. Thus, the exclusion was enforceable as written to exclude Jason as a covered driver of the Monte Carlo, absent a violation of public policy. *Pickett,* 963 S.W.2d at 311. As such, the respondent established a *prima facie* case for summary judgment by showing that pursuant to the driver exclusion endorsement of the policy the appellants did not sustain a covered loss under the policy as to the property damage to their Monte Carlo while being operated by Jason.

Once the movant has met the burden imposed by Rule 74.04(c) for establishing a *prima facie* case for summary judgment, as is the case here, the non-movant, in order to defeat summary judgment for the movant, must show that one or more of the material facts relied upon by the movant is genuinely disputed or that under the undisputed facts the movant is not entitled to judgment as a matter of law. *ITT,* 854 S.W.2d at 381. Thus, having found that the respondent established a *prima facie* case for summary judgment, we must next address whether the appellants, in their response to the respondent's motion for summary judgment, properly raised a genuine dispute of material fact as to whether the driver exclusion endorsement as to Jason represented the true intent and agreement of the parties and was enforceable.

To establish a genuine dispute of material fact,

"an adverse party may not rest on the mere allegations or denials of his pleading, but his *response,* by affidavits or as other-

wise provided in this Rule 74.04, *shall set forth specific facts* showing there is a genuine issue for trial."

*ITT*, 854 S.W.2d at 381 (*quoting* Rule 74.04(e)). The non-movant's response

shall admit or deny each of movant's factual statements ... shall state the reason for each denial, shall set out each additional material fact that remains in dispute, and shall support each factual statement asserted in the response with specific references to where each such fact appears in the pleadings, discovery or affidavits.

Rule 74.04(c)(2). "A 'genuine issue' is a dispute that is real, not merely argumentative, imaginary or frivolous." *ITT*, 854 S.W.2d at 382.

To rebut the respondent's *prima facie* case for summary judgment, the appellants filed the affidavit of appellant David Benny in an attempt to show that they never intended to agree to the driver exclusion endorsement signed by David Benny and, therefore, it was unenforceable. In this regard, we would agree with the appellants that if the policy exclusion did not represent the intent of the parties, it would not be enforceable. *See American Nat'l Ins. Co. v. Noble Communications Co.*, 936 S.W.2d 124, 131–32 (Mo.App. 1996) (holding that when terms in a contract are not accepted by all parties to the contract, there is no mutuality of agreement and, thus, the contract is unenforceable).

■■■ Affidavits used to rebut a *prima facie* case for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be *admissible* in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Rule 74.04(e) (Emphasis added). Thus, in order for David Benny's affidavit to have been considered by the trial court in rebutting the respondent's *prima facie* case for summary judgment, the facts contained therein would have had to have been admissible in evidence on the issue of whether by his signing of the exclusion endorsement the appellants intended to agree to exclude all coverage for Jason. The question, then, is whether the policy exclusion in question reflected the agreement of the parties.

"The cardinal rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention. Where there is no ambiguity in the contract the intention of the parties is to be gathered from it and it alone, and it becomes the duty of the court and not the jury to state its clear meaning."

*Preferred Physicians Mut. Management Group, Inc. v. Preferred Physicians Mut. Risk Retention Group, Inc.*, 961 S.W.2d 100, 102 (Mo.App.1998) (citation omitted). *See Taylor–Morley*, 929 S.W.2d at 922 (holding that evidence of how a contract is understood by the parties will only be used when the language of the contract is not clear and unambiguous). A trial court cannot use parol evidence, such as affidavit testimony, to vary or contradict terms of an unambiguous contract. *Preferred Physicians*, 961 S.W.2d at 103. Because such evidence is inadmissible, it is, therefore, properly ignored in ruling on motions for summary judgment. *Id.* at 103.

Here, as discussed, *supra*, the driver exclusion endorsement's language is clear and unambiguous. It, by its express terms, excluded all coverage, including collision coverage, for Jason's operation of his parents' Monte Carlo. Looking at the four corners of the document, there can be no debate that the appellants agreed to exclude all coverage for Jason. Thus, David Benny's affidavit, describing that the appellants' intentions in signing the driver exclusion endorsement was never to agree to a total exclusion of coverage for Jason, would not have been admissible in evidence under the parol evidence rule to contradict the unambiguous terms of the policy exclusion and could not have been considered by the trial court to rebut the respondent's *prima facie* case for summary judgment. Because the appellants did not effectively rebut the respondent's *prima facie* case for summary judgment with the affidavit of David Benny, the trial court did not err in granting the respondent's motion for summary judgment as the appellants claim in this point.

Point denied.

## II.

In Point II, the appellants claim that, even if we find that there is no genuine dispute as to the underlying material facts as claimed by the appellants in Point I, then the trial court still erred in granting summary judgment to the respondent. The appellants contend that under the undisputed facts the respondent was not entitled to judgment as a matter of law in that the driver exclusion endorsement in their policy of insurance violated, in part, the MVFRL in excluding the required minimum liability coverage for Jason's operation of their Monte Carlo and, not containing a savings clause, the entire exclusion was rendered void and unenforceable. We disagree.

In making this claim, the appellants are not contending that the exclusion of *collision* coverage for Jason's operation of their Monte Carlo violated the MVFRL. What the appellants are contending is that, because the exclusion violated, in part, the MVFRL, by excluding the minimum required liability coverage for Jason, then the whole exclusion was rendered unenforceable because it did not contain a savings clause, making Jason a covered driver of their Monte Carlo. The respondent contends that the driver exclusion endorsement, to the extent it excluded collision coverage for Jason, did not violate the MVFRL and thus, even in the absence of a savings clause, was enforceable. Having already found, *supra,* that the respondents made a *prima facie* case for summary judgment, the issue presented in this point is whether the exclusion's violation, in part, of the MVFRL by excluding the required minimum liability coverage for Jason rendered the whole exclusion unenforceable where there was no savings clause in the contract.

The appellants are correct in contending that an automobile policy driver exclusion endorsement that is against public policy, as found in the MVFRL, is void and unenforceable. *Halpin v. American Family Mut. Ins. Co.,* 823 S.W.2d 479, 480, 482–83 (Mo. banc 1992). However, we disagree that such an exclusion is rendered unenforceable as to excluded coverage not required by the MVFRL. In *Halpin,* the Missouri Supreme Court held that a household exclusion clause was invalid to the extent it excluded the *liability* coverage required by the MVFRL for bodily injury to household members. *Id.* at 480–81. However, the court held that the MVFRL would not apply to void the exclusion to the extent it excluded coverage not required by the act. *Id.* at 482–83. The court's holding in *Halpin* was not contingent upon there being a savings clause in the contract. Thus, *Halpin* teaches us that a driver exclusion endorsement in an automobile insurance policy is rendered unenforceable only to the extent it violates the MVFRL, regardless of whether there is a savings clause, as the appellants contend here. *Id.* at 482–83. Consistent with the holding in *Halpin* in this respect are *State Farm Mutual Automobile Insurance Co. v. Zumwalt,* 825 S.W.2d 906, 909 (Mo.App.1992) (holding that the household exclusion clause of the automobile insurance clause was unenforceable insofar as it purported to deny coverage in the amounts required by the MVFRL, but was enforceable as to any coverage exceeding those amounts) and *Ezell v. Columbia Insurance Co.,* 942 S.W.2d 913, 919 (Mo.App.1996) (holding that since the definition of "uninsured motor vehicle," as defined in the policy, would not apply to the extent it violated the MVFRL, but otherwise would as it applied to coverage exceeding the mandatory amount).

The only authority cited by the appellants for their claim that a savings clause was necessary to preserve the validity of the driver exclusion endorsement, to the extent it excluded collision coverage for Jason, is *Ingram v. Shelter Mutual Insurance Co.,* 922 S.W.2d 854 (Mo.App.1996). A review of this case finds no support for the appellants' claim. In *Ingram,* the insurer appealed money judgments for the injured insureds on the basis that the trial court erred in refusing to enforce the policy's driver exclusion endorsement, which excluded any and all coverage for the negligent driver, as being against public policy as found in the MVFRL. The court first recognized that the Missouri Supreme Court held in *Halpin* "that household exclusion clauses would not be enforced insofar as they purported to deny coverage in the amounts required by Missouri law." *Id.* at 856. Recognizing this

fact and being bound by the supreme court's holding, the court then held that the exclusion before it was not enforceable to deny *liability* coverage to the insureds, in that to do so would violate the MVFRL. The court's holding in *Ingram* was consistent with *Halpin* in that, by affirming the trial court's money judgments for the insureds, it found that the trial court was correct in invalidating the exclusion to the extent it excluded liability coverage for the insureds' injuries. Thus, the issue of whether the entire exclusion was unenforceable was not before the *Ingram* court as the appellants would have us believe.

Point denied.

### Conclusion

For the foregoing reasons, the circuit court's grant of summary judgment for the respondent is affirmed.

All concur.